UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF**
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 24, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Nancy R. v. Frank Bisignano, Acting Commissioner, Social Security Administration*[1]
      Civil No. 24-1825-CDA

Dear Counsel:

On June 24, 2024, Plaintiff Nancy R. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 13) and the parties' filings[2] (ECFs 14, 15, 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion and AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on June 29, 2021, alleging a disability onset of May 5, 2021. Tr. 20, 228. Plaintiff's claims were denied initially and on reconsideration. Tr. 81-97. On January 5, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 38-63. Following the hearing, on February 16, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 17-32. The Appeals Council denied Plaintiff's request for review, Tr.

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on June 24, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, however, Plaintiff filed a motion for summary judgment, or in the alternative, a motion to remand. *See* ECF 14.

[3] 42 U.S.C. §§ 301 et seq.

3-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since May 5, 2021, the alleged onset date." Tr. 22. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "obesity; lumbar degenerative disc disease status post decompression; lumbar spinal stenosis; right knee osteoarthritis; chronic ankle sprain." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of benign essential hypertension, mixed hyperlipidemia, diabetes, obstructive sleep apnea, depression, and anxiety. Tr. 23-25. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 25. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except can occasionally climb ramps or stairs and can never climb ladders, ropes or scaffolds; can occasionally balance, stoop; cannot kneel, crouch or crawl; can tolerate occasional exposure to extreme temperatures, humidity, fumes/dusts/odors/gases/poor ventilation and hazards such as dangerous moving machinery and unprotected heights.

Tr. 26. The ALJ determined that Plaintiff could perform past relevant work as an administrative assistant (DOT[4] #169.167-010), as generally performed. Tr. 31. Therefore, the ALJ concluded

---

[4] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

that Plaintiff was not disabled.  *Id.*

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff raises two arguments on appeal.  First, Plaintiff argues that the ALJ erroneously found Plaintiff's anxiety and depression to be non-severe impairments at step two.  ECF 15, at 10-12.  Second, Plaintiff asserts that the ALJ's RFC assessment is legally insufficient.  *Id.*, at 12-14.  With respect to the second argument, Plaintiff contends that the ALJ (1) failed to include mental limitations in her RFC, such as simple, routine tasks; occasional changes; no production pace work; occasional interaction with co-workers, supervisors/employers and the public; off task; and unscheduled absences; (2) erroneously found that Plaintiff can sit for six hours at the sedentary exertion level; and (3) failed to account for Plaintiff's time off task and inability to consistently attend work.  *Id.*  Defendant counters that the ALJ's step two finding and the ALJ's RFC assessment are supported by substantial evidence.  ECF 16, at 6-12.

#### A. The ALJ did not err in assessing Plaintiff's depression and anxiety.

"At step two of the five-step sequential evaluation, the ALJ determines if the claimant has an impairment, or a combination of impairments, that is severe and meets the duration requirement."  *Sharon W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2707, 2019 WL 2234499, at *1 (D. Md. May 23, 2019).  An impairment is "severe" if it "significantly limit[s the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1522(a), 416.922(a).  If the ALJ finds any impairment to be severe, "the ALJ continues with the sequential evaluation and considers how each of the claimant's impairments impacts her ability to perform work."  *Sharon W.*, 2019 WL 2234499, at *1.  In formulating a claimant's RFC, the ALJ "consider[s] all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe'[.]"  20 C.F.R § 404.1545(a)(2); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(a)(2), 416.945(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).  The RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not."

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (italics omitted) (recognizing that step two of the sequential evaluation process is "merely a threshold determination meant to screen out weak claims" and is "not meant to identify the impairments that should be taken into account when determining the RFC").

Despite Plaintiff's contention, the ALJ supported their step-two analysis of Plaintiff's depression and anxiety with substantial evidence. The SSA follows a "special technique" when evaluating the severity of mental impairments. 20 C.F.R. § 404.1520a(a). To apply the technique, an ALJ rates a claimant's degree of limitation in four categories: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). Each area is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id.* § 404.1520a(c)(4). "The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* If the claimant's degrees of limitation are no more than "mild," the ALJ "will generally conclude" that the claimant's mental impairments are not severe. *Id.* § 404.1520a(d)(1).

A careful review of the ALJ's decision makes clear that the ALJ properly applied the special technique. In assessing Plaintiff's ability to understand, remember, or apply information, the ALJ found that plaintiff had a mild limitation. Tr. 24. The ALJ acknowledged that Plaintiff reported short term memory issues, scattered thoughts, and sometimes needing to read written instructions more than once. *Id.* The ALJ observed, however, that the record indicated intact recent and remote memory, good judgment, and capability to understand and follow instructions independently. *Id.* The ALJ noted that the medical evidence showed "no serious deficits in long-term memory, short-term memory, insight, and judgment"; Plaintiff scored 25/30 on the mini mental status exam; and Plaintiff gave "a good history of her medical and mental health history" to her practitioners and during her testimony. *Id.* The ALJ noted that Plaintiff "reported watching TV and knitting for pleasure, which requires some memory and understanding" and "performs necessary household activities, such as cooking, cleaning, and shopping, which require a basic level of understanding, remembering, and applying information." *Id.*

In assessing Plaintiff's ability to interact with others, the ALJ found that Plaintiff had no limitation. *Id.* The ALJ noted that, according to Plaintiff's Adult Function Report, Plaintiff socializes with friends, spends time with her husband, talks with friends on the phone, had no problems being around others unless she had gone without sleep, had no problems getting along with others, and had not been laid off of fired due to not getting along with others. *Id.* The ALJ observed that Plaintiff's treating providers did not observe any serious deficiencies in eye contact, speech, or conversation, and Plaintiff "told Dr. Stein that she went to public places and had no difficulty in crowds." *Id.* The ALJ noted that Plaintiff did not complain of serious problems interacting with others to her treating providers and Plaintiff reported socializing with family and friends in and outside her house, lived with family without serious problems, reported good relationships with friends and family, and went out in public to go shopping. *Id.*

In assessing Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ found that Plaintiff had a mild limitation. *Id.* The ALJ acknowledged Plaintiff's testimony "that her

depression and anxiety limit her ability to concentrate on tasks." *Id.* The ALJ observed, however, that the medical evidence showed Plaintiff "generally did not complain to treating practitioners of serious difficulty maintaining concentration, persistence, and pace" and that her treating providers "did not observe that [Plaintiff] was overly distractible or slow." *Id.* The ALJ noted that Plaintiff reported "adequate symptom control from psychiatric medications" and that mental status examinations showed Plaintiff "had no serious problem completing serial 7s and other calculations." *Id.* The ALJ observed that Plaintiff "reported watching TV, read[ing] articles online, and knitting for pleasure, which requires some concentration and persistence" and "reported that she cares for dogs, cooks, cleans and shops in stores for groceries and clothing." *Id.*

In assessing Plaintiff's ability to adapt or manage oneself, the ALJ found that Plaintiff had a mild limitation. *Id.* The ALJ observed that the medical evidence shows Plaintiff "did not usually complain about serious problems with adaptation and managing herself" and that treating providers noted Plaintiff "had no deficiencies in hygiene and wore appropriate attire." Tr. 24-25. The ALJ noted that Plaintiff reported no problems with being aware of normal hazards, taking appropriate precautions, caring for herself, dressing, bathing, doing errands alone, or any problems with independently making plans and setting goals. Tr. 25. The ALJ observed that Plaintiff reported walking the dog, driving, going out alone, shopping in stores, and handling activities of daily living without significant assistance from others. *Id.* Moreover, Plaintiff's Function Report noted that Plaintiff "is able to prepare meals on her own and do light cleaning and performs personal care" and that "she shops in stores for groceries, pays bills, uses a checkbook without issue." *Id.* Moreover, Plaintiff told a consultative examiner that she enjoys watching television, reading articles online, and as recently as 2023, that she had no difficulty running errands alone, dressing, bathing, and no issues with remembering or making decisions. *Id.*

The ALJ concluded that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities," and therefore are non-severe. *Id.* (emphasis omitted). The Court finds that the ALJ adequately explained why Plaintiff's depression and anxiety had no more than a minimal effect on her work-related functioning and are therefore non-severe. *See* SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985) ("[A]n impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability to do basic work activities[.]"). The analysis detailed the evidence considered and the ALJ's determinations based on that evidence. Thus, the ALJ did not err at step two.

Plaintiff argues that the RFC "fails to cure the step two error in as much as it fails to include [Plaintiff's] physical and mental health limitations, including off task and unscheduled absences." ECF 15, at 12. Plaintiff further argues that the ALJ failed to include mental limitations in the RFC, including limitations to "simple, routine tasks; occasional changes; no production pace work; occasional interaction with co-workers, supervisors/employers and the public; off task; and unscheduled absences" because the prior ALJ included similar findings for a closed period of benefits. *Id.*, at 12-13. Plaintiff avers that Plaintiff's physical impairments and pain exacerbate her anxiety and depression, and had the ALJ included these mental limitations in her RFC, Plaintiff

"would have been unable to perform her past relevant work and ultimately been found disabled per the grid rules." *Id.*, at 13.

After applying the special technique, the ALJ must assess the claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at *4. An RFC assessment is "more detailed" than a special-technique analysis: to determine RFC, the ALJ must "itemiz[e]" any functional deficits resulting from the limitations identified during the special-technique analysis. *Id.* The ALJ must do so even if they previously found that the claimant's mental limitations were "mild." *See Felix S. v. Comm'r of Soc. Sec.*, 630 F. Supp. 3d 423, 430 (W.D.N.Y. 2022); *accord Paar v. Astrue*, No. 9-5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012). Having found no error at step two, and because Plaintiff does not present any evidence otherwise, the Court does not need to address Plaintiff's arguments regarding her RFC. *See David P. v. Kijakazi*, No. BAH-22-2745, 2023 WL 5984169, *3, n.5 (D. Md. Sept. 14, 2023) (finding no error at step two, therefore not proceeding with Plaintiff's argument regarding the RFC).

To be sure, a careful review of the ALJ's assessment of Plaintiff's RFC shows that the ALJ considered Plaintiff's anxiety and depression in their RFC assessment. The ALJ acknowledged Plaintiff's testimony that she "stopped work because she was not able to concentrate on the job due to pain and the anxiety"; that "the anxiety is heavy when she needs to go to appointments"; and that Plaintiff "has panic attacks but she tries to calm herself down." Tr. 27. The ALJ considered the opinions of Plaintiff's medical providers, including the opinion of Dr. Stein who assessed, among other things, Plaintiff's complaints "of ongoing depression and anxiety with normal sleep on medication and normal appetite." Tr. 29. Dr. Stein prescribed Plaintiff Cymbalta for depression and pain and opined that Plaintiff "was able to understand and follow instructions independently and that [Plaintiff's] functional limitations appeared to be in the areas of physical problems" and that Plaintiff's "[j]udgment, insight, and persistence appeared intact." *Id.* In finding Dr. Stein's opinion persuasive, the ALJ observed that records showed normal affect and mood, and that Plaintiff "often reported no depression or anxiety." *Id.*

Moreover, the ALJ considered the prior ALJ's decision, during which the prior ALJ found Plaintiff disabled for a closed period from December 2, 2014 through March 8, 2016. Tr. 30. The prior ALJ found, among other things, Plaintiff's "persistent depressive disorder with anxious distress, mood disorder and dysthymic disorder" to be severe medically determinable impairments. *Id.* The prior ALJ determined that Plaintiff "could perform simple and routine tasks in a setting with only occasional and superficial changes and no production pace work[,]" and that Plaintiff "could have occasional interaction with the public and coworkers and would be expected to miss work at least two days per month on an unscheduled basis during that closed period." *Id.* The ALJ gave the prior decision "some weight[,]" concluding that "[t]he current evidence supports most of the same impairments except . . . mental health limitations are reduced since the prior adjudication and thus nonsevere for the period at issue." *Id.*

Plaintiff fails to identify any evidence that the ALJ failed to review. To be sure, the ALJ need not discuss every piece of evidence of record or follow a particular format in conducting his analysis. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("there is no rigid

requirement that the ALJ specifically refer to every piece of evidence in his decision"). Plaintiff disagrees with how the ALJ evaluated Plaintiff's depression and anxiety. But the Court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Accordingly, the Court finds that the ALJ did not err at step two, and, even if the ALJ did err, the ALJ discussed and considered Plaintiff's depression and anxiety in the formulation of Plaintiff's RFC. Because Plaintiff made the threshold showing that several of her impairments were severe, the ALJ continued with the sequential evaluation process and properly considered all impairments when determining Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

### B. The ALJ did not err when assessing Plaintiff's ability to sit.

An RFC assessment must include an evaluation of a claimant's ability to perform the physical functions listed in 20 C.F.R. §§ 404.1545(b) and 416.945(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that "may reduce [a claimant's] ability to do . . . work." 20 C.F.R. §§ 404.1545(b), 416.945(b); *see* SSR 96-8p, 1996 WL 374184, at *5. A claimant's RFC is "the most [they] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).

Only after such an analysis may an ALJ express RFC in terms of the exertional level of work of which the ALJ believes the claimant to be capable. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021); *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (holding that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested'") (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" SSR 96-8p, 1996 WL 374184, at *7. Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Plaintiff argues that "it is unconscionable that the ALJ finds that [Plaintiff] can sit six hours in an eight-hour workday considering the objective findings and opinions concerning her lower back, right knee and foot." ECF 15, at 13. Plaintiff asserts that substantial evidence supports a less than sedentary RFC because "MRIs of her lumbar spine clearly show that the surgery did not help and if anything, that her lumbar spine has progressed since the prior studies"; a doctor "recommended a lumbar decompression/fusion"; and Plaintiff "suffers from significant arthritis in her right knee and tendinosis in her right foot." *Id.*

The Court finds Plaintiff's arguments unavailing. The RFC assessment finds support in the weight that the ALJ assigned to the opinions of the prior administrative medical findings. *See* Tr. 30. The ALJ evaluated the prior administrative medical findings of the medical consultants, opining, among other things, that Plaintiff could sit for six hours in an eight-hour work day at the light exertion level, and found these opinions "partially persuasive." Tr. 30; *see* Tr. 85, 94. The ALJ noted that they "relied somewhat more on the treating providers' statements indicating some greater limitation with walking and postural and environmental, as well as [Plaintiff's] self-reports and testimony and limited to sedentary and no kneel, crouch or crawl." Tr. 30. The ALJ limited Plaintiff to a sedentary RFC due to "back pain/spasms combined with obesity," and Plaintiff's complaints of pain and "that she sometimes experiences numbness or tingling in legs." *Id.*

Moreover, as explained above, the ALJ considered and gave "some weight" to the prior ALJ's decision. Tr. 30-31. The prior ALJ found that Plaintiff could, among other things, "perform work at the light exertion level with the ability to occasionally climb ramps or stairs, stoop, kneel, crouch, balance and crawl." Tr. 30. The instant ALJ found "that the ongoing nature of the knee arthritis, coupled with obesity and the spine disorder which has worsened since 2019, as well as the chronic ankle sprain, support a limitation to sedentary exertion along with limitations to no kneeling, crouching or crawling" and additional environmental limitations. Tr. 30-31. The ALJ reasoned that "[t]he exertional and postural limits are based on [Plaintiff's] allegations of pain with extended walking or standing, her inability to squat or walk on heels and toes at the consultative exam as well as an antalgic gait at at [sic] least one visit and the notable issues revealed with imaging of the spine." Tr. 31. The ALJ found that "while imaging did not reveal . . . osseous abnormalities, [Plaintiff] continued to report pain in the ankle/foot area which will limit walking." *Id.* The ALJ concluded that "the evidence as a whole supports a limitation to work at the sedentary exertion level with additional postural and environmental restrictions[,]" noting that the evidence of record at the time of the prior ALJ's decision "supported fewer physical limitations than the current record supports." *Id.*

Plaintiff argues that "[b]oth of her treating providers issued almost identical opinions, limiting [Plaintiff] to less than sedentary work" as support for her assertion that she is limited to a less than sedentary RFC. ECF 15, at 13. However, as Defendant correctly argues, Plaintiff "does not argue or make any showing that the ALJ's medical opinion analysis was deficient." ECF 16, at 10. In fact, the ALJ evaluated the exact medical opinions that Plaintiff cites to and found these opinions "not persuasive." *See* Tr. 28-29. Specifically, the ALJ evaluated Dr. Peet's Lumbar Spine Medical Source Statement, opining among other things, that Plaintiff "could sit/stand/walk less than 2 hours in an 8 hour workday." Tr. 28. The ALJ found Dr. Peet's opinion "not persuasive because it is not totally consistent with his own treating notes." Tr. 29. The ALJ also evaluated consultative registered nurse practitioner ("CRNP") Ms. Raab's Lumbar Medical Source Statement and Medical Assessment, opining among other things, that Plaintiff could "sit/stand/walk for less than 2 hours" and that Plaintiff "required the use of a cane[.]" Tr. 29-30. The ALJ found Ms. Raab's assessments not persuasive and "not supported by the record" showing normal gait and station and no need for an assistive device. *Id.*

*Nancy R. v. Bisignano*
Civil No. 24-1825-CDA
July 24, 2025
Page 9

Elsewhere in the decision, the ALJ examined Plaintiff's physical limitations and acknowledged Plaintiff's testimony that "she suffers from back pain" and "complained that her back pain was worse with standing and her pain improved with sitting." Tr. 28. The ALJ noted that a "June 2021 lumbar spine MRI showed subtle spondylolisthesis at L4-5" and that there was "significant compression of the thecal sac from facet arthropathy at L4-5 at the area of the prior surgery[,]" but that "pain was less severe than prior to her surgery." *Id.* The ALJ considered that in 2021, Plaintiff was seen "for a right chronic ankle sprain, a ganglion cyst of the 4th metatarsal and peroneus longus tendinitis[,]" but that Plaintiff "had full range of motion of the ankle, subtalar and transverse tarsal joints with full 5/5 strength, normal 2+ reflexes and sensation was intact to light touch[,]" a positive anterior drawer test, and treatment continued with conservative measures. *Id.* The ALJ stated that in June 2023, after Plaintiff's complaints of knee pain, numbness in her legs, and "that the knee felt weak when going up the stairs[,]" Plaintiff "was diagnosed with arthritis and decreased cartilage in the knee" and an "MRI was ordered for her knee and muscle relaxers were prescribed for her back spasms." *Id.* After examining the objective medical evidence, the ALJ found that "the evidence indicates that [Plaintiff] has some limitations but none that prevent sustained employment." *Id.*

Plaintiff identifies no unresolved evidentiary conflicts concerning Plaintiff's ability to sit at the sedentary exertional level. The ALJ permitted meaningful review by incorporating the RFC assessment of persuasive sources, including the prior administrative medical findings of the medical and psychological consultants, into the ALJ's own RFC assessment. *See Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017) (holding that an ALJ adequately supported limitations in the RFC assessment by assigning persuasive value to the opinions of doctors who addressed the limitations in detail); *Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis of her exertional limitations. Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in [assessing] RFC."); *Audlica D. v. Kijakazi*, No. BAH-22-1046, 2023 WL 1769665, at *5 (D. Md. Feb. 3, 2023) (finding harmless error where the claimant failed to show how the RFC may have changed if the ALJ performed a more in-depth function-by-function analysis). Plaintiff's disagreement with the ALJ's conclusions cannot displace such conclusions when they are, as here, supported by substantial evidence. Plaintiff's argument again amounts to a request to reweigh evidence and, once again, must fail.

    C. <u>The ALJ did not err by excluding from the RFC time off-task and inability to consistently attend work.</u>

Last, Plaintiff contends that "the ALJ's RFC fails to account for [Plaintiff's] time off task and inability to attend work on a consistent basis as a result of her impairments." ECF 15, at 13-14. As stated above, the ALJ's discussion adequately explained why Plaintiff's non-severe, mild mental limitations did not warrant any corresponding RFC limitations. *See Kenneth C. v. Kijakazi*, No. 1:22-CV-02936-BAH, 2023 WL 5721641, at *4 (D. Md. Sept. 5, 2023) ("This analysis, while brief, makes clear that the ALJ did not determine that Plaintiff's mild 'paragraph B' limitations, or the non-severe mental impairments corresponding to them, warranted RFC restrictions.").

*Nancy R. v. Bisignano*
Civil No. 24-1825-CDA
July 24, 2025
Page 10

Plaintiff fails to identify any evidence that the ALJ failed to review. Yet again, the Court rejects the invitation to reweigh evidence.

Moreover, Plaintiff argues that the vocational expert ("VE") "testified at the hearing that an employer will not tolerate an individual being off task for 25 percent or more of the workday, absent two or more days per month or needing unscheduled breaks every 30 minutes for 10-15 minutes throughout the workday." ECF 15, at 14 (citing Tr. 61-62). Plaintiff asserts that her physical limitations "would affect her ability to concentrate and focus and cause her to be off task at times throughout the workday well beyond the time period allowed for normal breaks, and for well over 15 percent of the workday, meaning that [Plaintiff] should be found disabled." *Id.*

Even though the ALJ contemplated off-task time and unscheduled absences, Tr. 60-61, "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *David R. v. Comm'r of Soc. Sec.*, No. 22-0088, 2022 WL 17362156, at *7 (S.D. Ohio Nov. 30, 2022) (quoting *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014)). Moreover, even though Plaintiff's attorney posed various hypotheticals to the VE regarding unscheduled breaks, off-task time, and unscheduled absences, an ALJ is not required to adopt the VE's suggested limitations. *See France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)) ("[A]n ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ."). As such, the ALJ did not err by failing to incorporate the VE's testimony of these limitations into the RFC. Plaintiff disagrees with how the ALJ considered the evidence related to her physical and mental limitations. Once again, the Court rejects Plaintiff's request to reweigh evidence.

V.   **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion for summary judgment, or in the alternative, motion to remand, ECF 14, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge